[Cite as *State v. Griffith*, 2012-Ohio-2628.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97366

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RICKY C. GRIFFITH

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549701

**BEFORE:** Stewart, P.J., Boyle, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** June 14, 2012

**ATTORNEY FOR APPELLANT**

Matthew J. King
1280 West Third Street, 1st Floor
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    John P. Colan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

**{¶1}** Defendant-appellant Ricky C. Griffith appeals from his conviction for felonious assault in connection with an incident in which he backed his pickup truck at a victim but did not hit her. He argues that the state failed to offer sufficient evidence that he acted knowingly, that the jury's verdict is against the manifest weight of the evidence, and that trial counsel was ineffective in several respects, but notably for failing to seek suppression of statements he made to the police.

I

**{¶2}** Griffith first argues that the state failed to show that he acted knowingly as a predicate for a conviction on felonious assault.

**{¶3}** We determine whether the evidence is sufficient to sustain a verdict by examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 78, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶4}** The state charged Griffith under R.C. 2903.11(A)(2): that he knowingly caused or attempted to cause physical harm to the victim by means of a deadly weapon — a motor vehicle.

{¶5} The evidence showed that the victim had parked her car in the parking lot of a post office. She entered the post office, completed her business, and returned to her parking space. A pickup truck was parked next to her car and she noticed a new paint mark on the side of her car. The victim was trying to rub out the mark when Griffith approached. She was apparently blocking his access to the door of his truck, so he told her to "move out of the way, bitch." She replied that he had hit her car and that she was trying to rub out the mark he left. He said that he did not hit her car and called her a "spic." In light of this response, the victim asked Griffith to supply her with his insurance information. He refused and tried to get her to move out of the way. When she continued to block him, he pushed her, causing her to bounce off her car and into his open truck door. The truck door slammed against Griffith's finger. He screamed in pain and said, "now I'm going to hit your car dumb spic bitch." He then slammed his truck door against her car, leaving a noticeable dent. Realizing that Griffith was leaving the scene, the victim moved behind and just to the side of the truck to take a photograph of his license plate. Griffith told her, "[g]o ahead, get a good picture, get it good, bitch." He then put the truck into reverse and backed up. She testified that she had to move out of the truck's way because she thought it was going to hit her.

{¶6} The victim called her father, an off-duty police officer who lived nearby, and described the truck that Griffith drove. The father quickly located the parked truck and waited for the police to arrive. The police questioned Griffith, who admitted that he had an altercation with the victim, although he denied that he had left a paint mark on her car.

He said that the victim had gone "crazy" and slammed a door on his finger, so he left the scene. He told the police that "he looked up in the rearview mirror, saw her behind the car" and "gunned it to get out of there."

{¶7} Griffith does not dispute that his truck could constitute a deadly weapon, *State v. Tate*, 8th Dist. No. 87008, 2006-Ohio-3722, ¶ 23, so his argument is limited to the question of whether he acted knowingly in attempting to cause the victim physical harm.

{¶8} R.C. 2901.22(B) defines the mental state of "knowingly" as:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶9} "The mental state of the offender is a part of every criminal offense in Ohio except for those plainly imposing strict liability." *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 18.

{¶10} Because a person's subjective mental state is not often proved by direct evidence, "[i]t must ordinarily be proven by reference to the surrounding facts and circumstances." *State v. Clark*, 101 Ohio App.3d 389, 405, 655 N.E.2d 795 (8th Dist.1995). The jury may thus presume the requisite intent when the natural and probable consequences of a defendant's action is to produce a result. *State v. Caldwell*, 79 Ohio App.3d 667, 678, 607 N.E.2d 1096 (4th Dist.1992).

{¶11} The state argues that the very broad appellate standard of review for the sufficiency of evidence requires us to uphold the jury's verdict because it was possible that a rational trier of fact could have concluded that Griffith's act of gunning his engine

as he reversed out of his parking space, despite knowing that the victim was behind the truck, showed that he acted with an intent to injure her.

{¶12} Although we think the facts offered at trial tended to show more so that Griffith acted recklessly (that is, he acted with heedless indifference to the consequences), we are unable to say that no rational trier of fact could have concluded from the evidence that Griffith acted knowingly. Griffith was angry because he had his finger smashed by a car door. Being in that state of mind, he confirmed to a police sergeant that "he looked up in the rearview mirror, saw her behind the car." The victim likewise testified that although she was standing slightly off to the side, she was "standing right behind the car, like he moved while I was still standing there." With knowledge that the victim was standing behind his truck, he gunned the engine as he put the truck in reverse gear, saying that he wished to "get out of there." The large size of the truck made it almost certain that the victim would have been injured had she not jumped out the way. The standard of review we use for questions concerning the sufficiency of the evidence is such that we are compelled to find that the state offered sufficient evidence to prove the felonious assault count.

{¶13} Griffith argues in his second assignment of error that the jury's verdict is against the manifest weight of the evidence. Despite correctly noting that the sufficiency of the evidence is conceptually distinct from the manifest weight of the evidence (with appropriate citations to the relevant standard of review), Griffith does not make a separate argument. Instead, he incorporates the same arguments he made in support of his claim

that the verdict was not supported by sufficient evidence. This fails the App.R. 16(A)(7) obligation to offer an argument with respect to each assignment of error and "the reasons in support of the contentions." We therefore disregard it.

## II

{¶14} Griffith next raises a number of arguments concerning trial counsel's performance at trial.

## A

{¶15} A claim of ineffective assistance of counsel requires a defendant to show that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This analysis requires two distinct lines of inquiry. First, we determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. When making this inquiry, we presume that licensed counsel has performed in an ethical and competent manner. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). Second, we determine whether "the defense was prejudiced by counsel's ineffectiveness." *Bradley*, 42 Ohio St.3d 136, at paragraph two of the syllabus. Prejudice requires a showing to a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at paragraph three of the syllabus.

B

{¶16} Griffith first argues that counsel should have filed a motion to suppress statements he made to the police in which he confirmed that he saw the victim standing behind the truck when he "gunned" the engine in reverse gear and left the scene. He maintains that the conversation took place during a custodial interrogation, but that he had not been advised of his right to remain silent.

{¶17} In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that custodial interrogations have the potential to undermine the Fifth Amendment privilege against self-incrimination by possibly exposing a suspect to physical or psychological coercion. *Id*. at 436. To guard against such coercion, the court established a prophylactic procedural mechanism that requires that a suspect receive a warning before custodial interrogation commences. *Id*. at 444. Suspects in custody must be warned, among other things, that they have a right to remain silent and that their statements may be used against them at trial.

{¶18} The Supreme Court has defined the term "custody" as the deprivation of "freedom of action in any significant way." *Id.* A suspect is in custody if, under the totality of the circumstances, a reasonable person would not feel free to end the encounter and leave. *Yarborough v. Alvarado*, 541 U.S. 652, 663-665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Although the location of the interrogation is not dispositive, it is a factor that courts consider when determining whether a suspect is in custody.

{¶19} Questioning by the police is thought to be less likely to rise to the level of a custodial interrogation when it occurs in a defendant's home. *State v. Petriashvili*, 8th Dist. No. 92851, 2009-Ohio-6466, ¶ 18; *State v. Hopfer*, 112 Ohio App.3d 521, 546, 679 N.E.2d 321 (2d Dist.1996). This is because a person's home is a place that "a reasonable person would have felt free to terminate the interview * * *." *Yarborough*, 541 U.S. at 664-665. Although Griffith was at a friend's house at the time he spoke to the police, there were no objective indications that he was not free to terminate the interview and leave.

{¶20} Testimony at trial showed that the police arrived at the friend's house where the truck identified by the victim had been parked. At least two officers were admitted into the house and Griffith was asked to "give his recollection of what happened." By all appearances, this questioning had none of the hallmarks of a custodial interrogation — Griffith was not handcuffed or separated from the owner of the home as he spoke to the police. By all accounts, he had a conversation with the police that lasted "well under a half hour." There was nothing objectively coercive about the atmosphere such that it turned into a custodial interrogation at which the police were required to give Griffith his *Miranda* warnings. Absent affirmative signs of coercion, we have no basis for finding that counsel's failure to file a non-meritorious motion to suppress Griffith's statements was prejudicial.

C

{¶21} Griffith next argues that trial counsel should have objected to the state's "attempts to indoctrinate the jury during voir dire" when the state established its own version of what constitutes "reasonable doubt" by equating it to "[r]eason and common sense." We reject this contention because the state's reference to reason and common sense comports with R.C. 2901.05(E), which defines "reasonable doubt" as "a doubt based on reason and common sense."

D

{¶22} During jury selection, defense counsel told the prospective jurors:

[S]ometimes the world is black and white and sometimes the truth is in the middle[.] * * * [Y]ou're going to hear from [the victim] * * * and you're going to hear from Mr. Griffith. You're going to hear the two versions of this event * * *. This isn't between [the victim] and Mr. Griffith, you are going to hear two sides.

Griffith did not testify, however, and now complains that defense counsel should not have created the expectation that he would be testifying when, in fact, he did not testify.

{¶23} The record on appeal suggests that Griffith, not trial counsel, made the decision that he would not testify. At the close of the state's evidence, trial counsel informed the court that "[a]t this time, your honor, throughout the day discussing with Mr. Griffith whether he was going to testify or not, and at this time he has decided not to."

{¶24} We are aware of no precedent for the proposition that trial counsel performs deficiently by following the defendant's own instructions. "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant — not an organ of the State

interposed between an unwilling defendant and his right to defend himself personally." *Faretta v. California*, 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Where ethically and legally possible, a lawyer must abide by a client's decisions regarding the objectives of the representation. Prof.Cond.R. 1.2(a); *State v. Cowans*, 87 Ohio St.3d 68, 80-81, 717 N.E.2d 298 (1999). *See also Coleman v. Mitchell*, 268 F.3d 417, 448, fn. 16 (6th Cir.2001) ("[C]ounsel was not ineffective for following the defendant's clear and informed instruction.").

{¶25} The transcript indicates that the decision to keep Griffith from testifying was made after discussions "throughout the day" between Griffith and defense counsel. So this is not a case where a snap decision had been made — the decision was the product of discussion between attorney and client. In addition, this is not a case where defense counsel made a unilateral decision without Griffith's knowledge or over Griffith's objections. The record suggests that defense counsel acceded to Griffith's instructions or that Griffith agreed with defense counsel's recommendation that he not testify.

{¶26} Griffith now argues that defense counsel should also have questioned prospective jurors during voir dire "as to whether or not they could hear no story from the Appellant and [respect] his right to remain silent." Counsel's failure to question jurors during voir dire concerning their attitude towards a defendant who does not testify is not an error that changes the outcome of the proceedings. The court instructed the jury that Griffith had a constitutional right not to testify and that his failure to testify "must not be considered for any purpose." We presume that jurors follow the court's instructions on

the defendant's right not to testify. *State v. Linville*, 10th Dist. No. 04AP-917, 2005-Ohio-3150, ¶ 28-29.

**{¶27}** Additionally, we fail to see how it would be effective trial strategy for defense counsel to assure the jury that the defendant will testify but ask it not to hold it against the defendant if he does not. "Voir dire is largely a matter of strategy and tactics." *State v. Lindsey*, 87 Ohio St.3d 479, 489, 721 N.E.2d 995 (2000). Counsel does not manage the jury's expectations about the defendant's possible testimony by saying: "maybe he will, maybe he won't." Defense counsel obviously thought that Griffith would be testifying at trial and conducted voir dire with that assumption. Circumstances at trial apparently dictated a change in strategy. But regardless of the reason for Griffith not testifying, that decision was a matter of trial strategy that we cannot question after the fact.

E

**{¶28}** Finally, Griffith complains that trial counsel should have called as a witness a friend of his who was on the scene at the time the events transpired. Griffith states that the friend could have testified concerning Griffith's questioning by the police and possibly rebut some of the accusations made by the police officers about how Griffith characterized his departure from the scene.

**{¶29}** A party seeking to establish ineffective assistance of counsel based on failure to call a witness must establish that the witness's testimony "would have significantly assisted the defense and affected the outcome of the case." *State v. Dennis*,

10th Dist. No. 04AP-595, 2005-Ohio-1530, ¶ 22; *State v. Pierre*, 8th Dist. No. 76228, 2000 WL 739517 (June 8, 2000).

**{¶30}** Griffith does not say what the witness would have testified to, only that he "could have testified regarding the questioning of Appellant" and "possibly could have controverted some of the accusations made by the Cleveland Police officers about how Appellant characterized his leaving the area and backing up his truck to get away from [the victim]." With his argument couched only in terms of possibility, it falls far short of showing that the friend's testimony would have "signficantly" assisted the defense.

**{¶31}** What is more, the evidence showed that although the friend was present during the confrontation between Griffith and the victim, he saw nothing. The victim said that the friend "walked away" before Griffith gunned the truck and the friend himself told the police that "he didn't see most of what happened at the initial incident." Griffith confirmed this fact in his recorded statement to the police, saying that after he backed out from his parking space he went to pick up that same friend, so it is plain that the friend could not have testified to the way Griffith backed up the truck. The friend's testimony would have been pointless.

**{¶32}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas  to carry this judgment into execution.  The

defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
KENNETH A. ROCCO, J., CONCUR