[Cite as *State v. Martinez*, 2016-Ohio-5515.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 103572 and 103573**

**STATE OF OHIO**

PLAINTIFF-APPELLANT/CROSS-APPELLEE

vs.

**ANTHONY M. MARTINEZ**

DEFENDANT-APPELLEE/ CROSS- APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-591086-A

**BEFORE:** E.A. Gallagher, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 25, 2016

**ATTORNEYS FOR PLAINTIFF-APPELLANT/CROSS-APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR DEFENDANT-APPELLEE/CROSS APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114

EILEEN A. GALLAGHER, P.J.:

{¶1} In this consolidated appeal, defendant Anthony Martinez appeals his conviction for importuning in violation of R.C. 2907.07(B)(1). He argues that the trial court erred in denying his motion to suppress statements he made (1) while being questioned by law enforcement officers at his home and (2) during a subsequent interrogation at the police station. The state appeals the trial court's decision to stay execution of the sex offender registration requirements imposed as part of Martinez's sentence pending resolution of this appeal. For the reasons that follow, we affirm the trial court's judgment and remand the matter for execution of the sentence imposed.

**Factual and Procedural Background**

{¶2} On the morning of November 7, 2014, Parma Police Detective David Sheridan and Parma Police Sergeant David Zarzeczny went to Martinez's home to question him regarding an incident that had allegedly occurred two days earlier at Parma High School. Detective Sheridan was investigating a complaint by a 15-year-old female student that Martinez, age 66, a hall monitor at Parma High School, had placed his arm around her shoulder and made several inappropriate sexual comments to her while escorting her to class. The student alleged that Martinez had asked when she would let "an old man like him have sex with [her]" and whether he could "lick her p****." Martinez was placed on administrative leave following the incident. Sergeant Zarzeczny, who worked part-time at the high school, completed the incident report.

{¶3} After reviewing the case file and incident report, Detective Sheridan spoke with Sergeant Zarzeczny regarding the allegations. Given his familiarity with Martinez and the fact that he had a "rapport" with him, Sergeant Zarzeczny thought Martinez would be more "comfortable" discussing the allegations if he were present and offered to accompany Detective

Sheridan to question Martinez regarding the allegations. Sergeant Zarzeczny testified that he had known Martinez for "[a] couple years," interacted with him frequently and "got along very well" with him. Detective Sheridan accepted the offer and the two officers drove to Martinez's residence in an unmarked police car. Detective Sheridan was in plainclothes; Sergeant Zarzeczny was in his police uniform.

{¶4} When the officers arrived at Martinez's residence, Martinez answered the door and invited them inside. Detective Sheridan brought a recording device with him and secretly recorded his interaction with Martinez beginning when Martinez opened the door. Detective Sheridan testified that it was not unusual for him to record an interview and that, "typically," all of his interviews are recorded.

{¶5} Once inside, Detective Sheridan introduced himself and asked Martinez whether he would prefer to talk at home or somewhere else. Martinez replied that they could talk there, offered the officers coffee and led them to the kitchen where the officers sat down at the kitchen table with Martinez and his wife, Diane Martinez ("Diane").

{¶6} After asking some basic questions regarding Martinez's background, Detective Sheridan informed Martinez of the allegations against him. Martinez acknowledged knowing the student involved but initially denied that he put his arm around her shoulder or made any inappropriate sexual comments to her. Approximately 11 minutes into the interview, Diane left the kitchen and went into a bedroom, located 20-30 feet from the kitchen, to get her 18-year-old daughter.

{¶7} After Diane left the room, Detective Sheridan told Martinez, "man to man," that he knew Martinez was not being truthful and that he was "digging [himself] into a hole [he] was not going to be able to get out of." The officers told Martinez that he was not under arrest and that

it was only because Sergeant Zarzeczny had told Detective Sheridan that Martinez was a "good guy" that they had come to his house to question him rather than arrest him and bring him to the police station for questioning. Detective Sheridan said that he "didn't want to do that" but that Martinez was going to have to "man up" and tell him "what really happened." Detective Sheridan testified that, at this point, Martinez had his head down in his hands, was "pale as a ghost" and was sweating. Sergeant Zarzeczny similarly testified that Martinez appeared "[v]ery nervous" and sweating, "[h]ad a hard time maintaining eye contact" and was "[s]ubtly trembling with his hands at the table."

{¶8} Detective Sheridan continued with the interrogation. He told Martinez that the student was prepared to testify in court against him and that they had video surveillance showing Martinez put his arm around the student and other evidence, which he declined to disclose, "that proves her story." Approximately 15 minutes into the interrogation, Martinez admitted to putting his arm around the student and making the alleged inappropriate sexual comments to her. At no point, either prior to or during the interrogation, did Detective Sheridan inform Martinez of his Miranda rights.

{¶9} After Martinez confessed, the officers told Martinez that they needed to go down to the police station so that Martinez could give a "more formal statement." Detective Sheridan and Sergeant Zarzeczny drove Martinez to the police station in Detective Sheridan's unmarked police vehicle.

{¶10} When they arrived at the police station approximately ten minutes later, Martinez was placed into an interview room. He was advised of his Miranda rights and gave a second statement in which he again admitted that he had placed his arm around the student's shoulder and had made the specific inappropriate sexual comments the student alleged he had made. The

relevant information and admissions elicited in the second interrogation were the same as those elicited in the first interrogation. Following the conclusion of the second interrogation, Martinez was arrested.

{¶11} On November 21, 2014, a Cuyahoga County Grand Jury indicted Martinez on a single count of importuning in violation of R.C. 2907.07(B)(1), a fifth-degree felony. Martinez pled not guilty.

{¶12} Before trial, Martinez filed a motion to suppress the statements he made during the two interrogations based on the officers' failure to advise him of his Miranda rights before the first interrogation. Following an evidentiary hearing, the trial court denied the motion to suppress, reasoning as follows:

> I've given careful analysis and consideration to the facts presented during the course of the proceedings thus far. I am going to deny the motion to suppress the oral and recorded statement.
>
> My review of the case law in this area suggests that, irrespective of my personal feelings about whether or not this is the best practice, the case law in our district and at the U.S. Supreme Court level on these facts does not support suppression.
>
> The case [law] is significantly — or gives great significance to where these interrogations take place. This questioning of Mr. Martinez was at his home.
>
> There is a point in the questioning at his home where the questioning by the detective is aggressive. Mr. Martinez is told that he is sweating bullets, or words to that effect, and that he might not be telling the truth and should admit to his behavior.
>
> My initial thought was that at that juncture the law might trigger Miranda warnings and advisement that he need not make any further statement, that he consult a lawyer. But I must report that the case law in the Eighth District [does not] seem to require that. It might be a question to ask the Eighth District, once again, but that is up to the parties. * * *

When he arrives at the police station, reference is made to the statements that he had already given. He is given his Miranda warnings, his advisement, if you will. He engages in further colloquy with the police. As that point he had a right to assert his Fifth Amendment rights and did not.

Case law in our district seems to allow that. It doesn't prohibit the admissibility

of the statement. * * *

{¶13} Martinez waived his right to a jury trial and the case was tried to the bench. After hearing all the evidence and the arguments of counsel, the trial court found Martinez guilty of importuning. The trial court ordered a presentence investigation report and scheduled the matter for sentencing.

{¶14} Prior to sentencing Martinez filed a motion to stay the execution of his sentence, including the sex offender registration requirements, pending his appeal. The state opposed the motion.

{¶15} On September 1, 2015, the trial court sentenced Martinez to five years of community control and ordered him to register as a Tier I sex offender/child victim offender. The trial court granted the motion to stay, ordering that execution of Martinez's sentence be stayed "until the case is sent back from the court of appeals."

{¶16} This court granted the state leave to appeal the trial court's order staying execution of Martinez's sentence, raising the following assignment of error for review:

ASSIGNMENT OF ERROR I:
A trial court may not stay execution of sex offender registration requirements pending appeal.

ASSIGNMENT OF ERROR II:

Even if the trial court had authority to stay execution of sex offender registration the trial court abused its discretion in staying the requirements where the factors weighed against bail.

{¶17} Martinez also filed an appeal, raising the following assignment of error for review:

ASSIGNMENT OF ERROR:
The Trial Court erred to the prejudice of Defendant by denying Defendant's Motion to Suppress his statements, in derogation of Defendant's right against self-incrimination and his right to counsel, as protected by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

For ease of discussion, we address Martinez's assignment of error first.

**Law and Analysis**

**Motion to Suppress**

{¶18} In his assignment of error, Martinez argues that the officers' failure to advise him of his Miranda rights prior to questioning rendered the confession he made to the officers during his at-home interrogation inadmissable. Martinez further argues that because the second interrogation at the police station was a virtual "repeat" of the first interrogation, the officers' failure to advise Martinez of Miranda rights prior to the first confession "voids the second" such that Martinez's second confession should have been inadmissible as well.

**Standard of Review**

{¶19} Appellate review of the denial of a motion to suppress involves a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Therefore, when considering a trial court's denial of a motion to suppress, our standard of review is "divided into two parts." *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). In a hearing on a motion to suppress, "'the trial court assumes the role of

trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'" *Id.* at ¶ 22, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998). Deference is, therefore, given to the trial court's findings of fact related to a motion to suppress if they are supported by competent, credible evidence. *Preztak* at ¶ 22. A reviewing court, must however, independently determine whether those facts satisfy the applicable legal standard. *Id.*

### "Custodial" Interrogation

{¶20} Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements "stemming from a custodial interrogation of the defendant" must be suppressed unless the defendant was informed, prior to any questioning, of his "right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479; *see also State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749 (2001). "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444. The determination of whether a "custodial" interrogation has occurred requires an inquiry into "'how a reasonable man in the suspect's position would have understood his situation.'" *State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 14, quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An individual is in "custody" for Miranda purposes if, "under the totality of the circumstances, a reasonable person would not feel free to end the encounter and leave." *See, e.g., State v. Griffith,* 8th Dist. Cuyahoga No. 97366, 2012-Ohio-2628, ¶ 18, citing *Yarborough v. Alvarado*, 541 U.S. 652, 664-665, 124 S.Ct. 2140,

158 L.Ed.2d 938 (2004); *see also State v. Gilbert*, 7th Dist. Mahoning No. 08 MA 206, 2012-Ohio-1165, ¶ 66-76 (identifying the ten-factor test certain courts have used "to help decide whether a suspect is in custody for purposes of a Miranda analysis," which includes the location of the questioning; whether the defendant was a suspect when the interview began; whether the defendant's freedom to leave was restricted; whether the defendant was handcuffed or told he was under arrest; whether threats were made or the defendant was physically intimidated during the interrogation; whether the police verbally dominated the defendant; the defendant's purpose in being at the location where the questioning occurred; whether any neutral parties were present and whether the police took any action to overpower, trick or coerce the defendant into making a statement), citing *State v. Tate,* 7th Dist. Mahoning No. 07 MA 130, 2008-Ohio-3245, ¶ 46-66. Thus, in this case, we must determine whether a reasonable person in Martinez's position would have felt that he was free to terminate the interrogation by Detective Sheridan and Sergeant Zarzeczny at his home.

{¶21} Martinez contends that the interrogation was "custodial" because he was "ambushed in his own home" by the two police officers, "intent on secretly recording him [and] persistently questioning him" until they secured a confession. He claims that Sergeant Zarzeczny's presence was designed to "lull" Martinez — who, by that time, was clearly a suspect — "into a false sense of security" and that his presence, combined with the secret recording of his interrogation, created a "police-dominated atmosphere" that deprived Martinez of his freedom in a significant way. We disagree. Although it may have been the better practice for the law enforcement officers to have informed Martinez of his Miranda rights prior to questioning him, we cannot say that their failure to do so rendered Martinez's statements inadmissible.

**{¶22}** Miranda warnings are not required simply because someone is a suspect. *State v. Petriashvili,* 8th Dist. Cuyahoga No. 92851, 2009-Ohio-6466, ¶ 16; *see also State v. Boyd*, 4th Dist. Adams No. 02CA744, 2003-Ohio-983, ¶ 7-8 ("[L]aw enforcement officers are not required to administer Miranda warnings to every person suspected in an investigation. * * * 'The mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in non-custodial settings.'"), quoting *Minnesota v. Murphy*, 465 U.S. 420, 431, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *but see State v. Robinson*, 6th Dist. Lucas No. L-06-1182, 2008-Ohio-3498, ¶ 271 ("As long as it remains undisclosed, a police officer's subjective view that an individual under questioning is a suspect has no bearing upon the question of whether that individual is in custody. * * * But if the officer's knowledge or belief is conveyed — either by word or deed —  to the individual being questioned, such knowledge or belief may bear upon the issue of custody, but only to the extent that it would have affected how a reasonable person in the position of the individual being questioned would have perceived his freedom to leave."). Likewise, Miranda warnings are not required simply because the questioning takes place in an allegedly coercive atmosphere. *See State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 26. As the United States Supreme Court explained in *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977): "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question."

**{¶23}** In general, questioning by law enforcement officers is less likely to rise to the level of a custodial interrogation when it occurs in a defendant's home. *See, e.g., Griffith,*

2012-Ohio-2628, at ¶19; *Petriashvili*, 8th Dist. Cuyahoga No. 92851, 2009-Ohio-6466, ¶ 18 ("'The mere presence of police officers does not render a suspect powerless, particularly when the suspect is within the familiar surroundings of her own home.'"). This is because "a person's home is a place 'a reasonable person would have felt free to terminate the interview * * *.'" *Griffith* at ¶ 19, quoting *Yarborough*, 541 U.S. at 664-665, 124 S.Ct. 2140, 158 L.Ed.2d 938. In this case, following a careful review of the record and consideration of the totality of the circumstances surrounding the interrogation, we find that Martinez was not in custody during the interrogation at his home.

{¶24} The "'ultimate inquiry'" when determining whether an individual is in "custody" for Miranda purposes is "'whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, ¶ 22, quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Where a defendant has not been placed under arrest, there must be some objective, "affirmative signs of coercion" or restraint to transform a police interview into a "custodial" interrogation. *See, e.g., Griffith* at ¶ 20. Martinez cites no authority supporting his claim that a law enforcement officer's surreptitious recording of an interrogation — which would not be known to the suspect — or a suspect's familiarity with one of the interrogating officers would be of decisive significance when determining, under the totality of the circumstances, whether an interrogation was "custodial." Indeed, where one of the interrogators is well known to the suspect, a reasonable person in the suspect's position might very well feel more "free to leave" or terminate an interrogation than if his interrogators were unfamiliar law enforcement officers.

{¶25} Although Martinez claims that the interrogation was a "set up," there are "no objective indications" in the record that Martinez was not free to terminate the interview at any time. *Griffith* at ¶ 19. The record reflects that after officers knocked on the door and introduced themselves, Martinez agreed to be interviewed at his home, invited the officers inside, showed them where to sit and offered them coffee. Martinez was not handcuffed or otherwise restrained and was told that he was not under arrest. He was not isolated from others or precluded from moving freely about his home during the interrogation. At the beginning of the interview, Martinez's wife was seated beside him. During the remainder of the interview, she and Martinez's daughter were in a bedroom 20-30 feet away. There is no evidence that the officers physically dominated, verbally abused or intimidated Martinez or in any way threatened, overpowered or coerced him into giving a statement. There is no evidence that Martinez ever attempted to end the interrogation. Although Detective Sheridan was persistent with his questioning — repeatedly challenging Martinez's denials of the allegations against him and telling Martinez that he did not believe Martinez was being truthful — this did not transform the interview into a "custodial" interrogation. *See, e.g., Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 at ¶ 20 (no custodial interrogation where defendant invited officers into her home, questioning by officers took place in defendant's home, officers did not handcuff or restrain the defendant, and defendant never made an attempt to end the interview); *Griffith,* 2012-Ohio-2628, at ¶ 20 (law enforcement officers' questioning of defendant at friend's home "had none of the hallmarks of a custodial interrogation" where defendant was not handcuffed, was not separated from the owner of the home during questioning and questioning was less than half an hour); *Robinson*, 2008-Ohio-3498, at ¶ 272-274 (a reasonable man in defendant's position would have understood that there was no formal arrest or restraint on his

movement to the degree associated with a formal arrest during one to one-and-one-half hour interview by plainclothes police in defendant's home; defendant invited the officers into his home and offered them seats in his living room; defendant was never handcuffed, restrained, threatened or told he could not leave and never asked the officers to leave or himself attempted to leave). *Compare State v. Tate,* 7th Dist. Mahoning No. 07 MA 130, 2008-Ohio-3245, ¶ 57-68, 72 (notwithstanding officers' statements to defendant that he was not a suspect, was not under arrest and was free to leave, defendant was subjected to custodial interrogation where, during interview at police station, police officers were verbally abusive and physically intimidating, i.e., screaming and cussing at defendant, calling him a liar," and shaking a finger at him, threatened him with arrest and prison and made him aware that his mother was being held "in some type of informal custody" until he gave the police certain answers to their questions).

{¶26} Even assuming — as appears to be the case — that the officers went to Martinez's home with the express purpose of attempting to elicit a confession from him, it would not impact our determination of whether Martinez was in "custody" for Miranda purposes. The subjective intent of the suspect and the officers is irrelevant in determining whether a suspect is in "custody" for Miranda purposes. *Petriashvili,* 2009-Ohio-6466, at ¶ 17; *Duhamel*, 2015-Ohio-3145, at ¶ 22 (determination of whether a defendant is in "custody" for purposes of *Miranda* "does not depend on the subjective feelings of the accused or the subjective, unarticulated goals of police"); *see also Cleveland v. Oles*, 2016-Ohio-23, 45 N.E.3d 1061, ¶ 20 (8th Dist.) ("'[a] policeman's unarticulated plan [to arrest a suspect] has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation'"), quoting *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.

**{¶27}** Considering the totality of the circumstances, we find that a reasonable person in Martinez's position would have understood during the interrogation that he was not under arrest, that his movement was not being restrained to the degree associated with a formal arrest and that he was free to leave or terminate the interrogation. Therefore, Martinez was not in custody during the interrogation at his home. Because the interrogation of Martinez at his home was not custodial and because Martinez was informed of his Miranda rights before confessing to the allegations a second time at the police station, the trial court did not err in denying Martinez's motion to suppress.

### Whether Confession During Interrogation at Home Was Voluntary

**{¶28}** Martinez also challenges the voluntariness of his confession during his at-home interrogation. Martinez contends that the "totality of the circumstances" — specifically, the fact that Martinez had no prior experience with the criminal justice system, was "confronted unexpectedly by the police" and was "repeatedly questioned" until he confessed — shows that his statements were "the product of the psychologically coercive atmosphere arranged by the police" and rendered his statements involuntary. Once again, we disagree.

**{¶29}** The issue of whether a confession is involuntary is separate from the issue of whether Miranda warnings should have been given. *See, e.g., State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 35 ("Voluntariness of a confession and compliance with Miranda are analytically two separate inquires."), citing *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Even when Miranda warnings are not required, a confession may be involuntary if the defendant's "'will was overborne'" and his "'capacity for self-determination was critically impaired because of coercive police conduct.'" *See, e.g., State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 41, quoting *State*

*v. Dailey*, 53 Ohio St.3d 88, 91-92, 559 N.E.2d 459 (1990); *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 11. The voluntariness of a confession is a question of law subject to de novo review. *Fouts* at ¶ 35; *State v. Bohanon*, 8th Dist. Cuyahoga No. 89443, 2008-Ohio-1087, ¶ 9, citing *Arizona v. Fulminate*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶30} As the Ohio Supreme Court explained in *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588:

> "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances * * *." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). Nevertheless, "the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 71, citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Consequently, unless the detectives used a coercive tactic, we need not assess the totality of the circumstances. *State v. Treesh*, 90 Ohio St.3d 460, 472, 2001 Ohio 4, 739 N.E.2d 749 (2001); *Perez* at ¶ 71. "Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis." *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

*Id.* at ¶ 93.

{¶31} The evidence presented at the suppression hearing supports the trial court's decision to allow Martinez's statements during his at-home interrogation to be admitted into evidence as a voluntary confession. We have carefully reviewed both the transcript from the suppression hearing and the audio recording of Martinez's at-home interrogation. While the recording demonstrates that officers used various interrogation tactics to encourage Martinez to "tell the truth" during the interrogation, including minimizing the conduct involved, acknowledging what a "good guy" he is, discussing the "evidence" supporting the victim's story,

urging him to be honest because it could help him and reminding Martinez that "people make mistakes" and that he had the love and support of his wife and family who would "forgive him," there is nothing to suggest that Martinez was subjected to any kind of "inherently coercive tactic" that might have made his statements involuntary and thus excludable.

{¶32} Admonitions to tell the truth are not coercive in nature. *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 19 (2d Dist.), citing *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 34 (2d Dist.); *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994) ("Admonitions to tell the truth are considered to be neither threats nor promises and are permissible."); *State v. Bradley*, 3d Dist. Logan No. 8-95-15, 1996 Ohio App. LEXIS 5685, *21 (Dec. 5, 1996) ("Repeated requests to tell the truth do not constitute coercion so as to invalidate a confession."), citing *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991); *State v. Western,* 2015-Ohio-627, 29 N.E.3d 245, ¶ 42 (2d Dist.) ("[a] police officer's assertion to the suspect that he or she is lying or that the suspect would not have another chance to tell his or her side of the story does not automatically render a confession involuntary"). Likewise, a police officer's statement to a suspect that a confession "will be helpful" or a police officer's offer to "help" the suspect if he confesses is "not improper" and does not "invalidate an otherwise legal confession." *Jones* at ¶ 19, citing *Stringham*, 2003-Ohio-1100, at ¶ 16 (officer's attempt to "downplay the seriousness of the offense, by explaining that the situation might not be as bad as [defendant] thought" and statements that "the situation was not going away" and that defendant should tell the truth and "'help' himself out of a bad situation" did not cause defendant's free will to be overborne or otherwise result in a coerced confession); *State v. Simms*, 10th Dist. Franklin No. 10AP-1063, 2012-Ohio-2321, ¶ 59 (where detectives "encourage[d] honesty, stating it could help [defendant]," detectives' actions "did not rise to the level of

coercion"); *see also Fouts*, 2016-Ohio-1104, at ¶ 38-41 (concluding that there was nothing "improper" in officer's attempt to "create a favorable environment for a confession" by minimizing the offense as a "mistake" and the defendant's behavior as "iffy"; nothing in officer's interview "approache[d] the level of conduct necessary to overcome [defendant's] will to remain silent" or "otherwise resulted in a coerced confession" where there was no "badgering" or threats by the officer, the "tone of the questioning was casual, conversational, and cooperative" and there was "no hint of coercion or duress during the interview"); *State v. Russell*, 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, ¶ 23 (detective's interrogation techniques and statements to defendant that he needed to "man up" and "take some lumps," i.e., tell the truth and take responsibility for his actions, were not inherently coercive tactics).

{¶33} Moreover, the "totality of the circumstances" does not support the conclusion that Martinez's will was overborne. For purposes of evaluating the voluntariness of a confession, the "totality of the circumstances" includes: "'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 54, quoting *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998). The record reflects that Martinez was 66 at the time of his confession, was a high school graduate and had been working regularly as a hall monitor at the high school for several years. Martinez makes no claim that he suffered from any type of physical disability or mental impairment that impacted the voluntariness of his confession. As detailed above, the at-home interrogation, from the moment the officers entered Martinez's home until they left the home, lasted less than 30 minutes, with Martinez confessing after speaking with the officers for approximately 15 minutes. This was the first time Martinez had been

questioned regarding the incident and the interrogation was conducted in his kitchen, a place that was comfortable and familiar to him. At all times during the interrogation, the officers were calm and respectful towards Martinez and the tone of their conversation was cooperative. There was no yelling or screaming by the officers. There was no evidence that Martinez was physically or verbally abused or threatened, was tricked or coerced into confessing, was made any promises that induced his confession or was subjected to any physical deprivation or mistreatment at any time during the interrogation.

{¶34} Because the trial court correctly ruled Martinez's statements were not the result of custodial interrogation and were voluntary, we overrule his assignment of error.

### Stay of Sex Registration Requirements Pending Appeal

{¶35} We now turn to the state's assignments of error. Because the state's assignments of error are related, we address them together. In its first assignment of error, the state argues that the trial court lacked authority to stay the sex offender registration requirements imposed as part of Martinez's sentence under R.C. 2949.02(A) and 2953.09(A)(2)(a).[1] In its second assignment of error, the state argues that even if the trial court had authority to stay the sex offender registration requirements, the trial court's decision to stay the sex offender registration requirements in this case was contrary to Crim.R. 46(C) and was, therefore, an abuse of discretion. The state's assignments of error raise what appear to be matters of first impression in Ohio.[2]

---

[1] The state does not contend that the trial court erred in staying execution of any other aspect of Martinez's sentence — just the sex offender registration requirements.

[2] In *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 116-119, the defendant argued that the trial court had erred in denying his motion to stay his sex offender registration requirements pending appeal on the grounds that it lacked authority to do so based on pre-*Williams* authority, but the Tenth District did not consider the merits of the argument, concluding that even if the trial court could have stayed the registration requirements pending appeal, the defendant had failed to demonstrate that he suffered any prejudice as a result based on its resolution of

**{¶36}** R.C. 2949.02(A) provides:

*If a person is convicted of any bailable offense*, including, but not limited to, a violation of an ordinance of a municipal corporation, in a municipal or county court or in *a court of common pleas* and if the person gives to the trial judge or magistrate a written notice of the person's intention to file or apply for leave to file an appeal to the court of appeals, the trial judge or magistrate *may suspend*, subject to division (A)(2)(b) of section 2953.09 of the Revised Code, *execution of the sentence or judgment imposed for any fixed time that will give the person time either to prepare and file, or to apply for leave to file, the appeal*. In all bailable cases, except as provided in division (B) of this section, the trial judge or magistrate may release the person on bail in accordance with Criminal Rule 46, and the bail shall at least be conditioned that the person will appeal without delay and abide by the judgment and sentence of the court.

(Emphasis added.)

**{¶37}** R.C. 2953.09(A)(2)(a) provides:

If a notice of appeal is filed pursuant to the Rules of Appellate Procedure by a defendant who is convicted in a municipal or county court or a court of common pleas of a felony or misdemeanor under the Revised Code or an ordinance of a municipal corporation, the filing of the notice of appeal does not suspend execution of the sentence or judgment imposed. However, consistent with divisions (A)(2)(b), (B), and (C) of this section, Appellate Rule 8, and Criminal Rule 46, the municipal or county court, *court of common pleas*, or court of appeals *may suspend execution of the sentence or judgment imposed during the pendency of the appeal* and shall determine whether that defendant is entitled to bail and the amount and nature of any bail that is required. The bail shall at least be conditioned that the defendant will prosecute the appeal without delay and abide by the judgment and sentence of the court.

(Emphasis added.) *See also* App.R. 8(A) ("The discretionary right of the trial court or the court of appeals to admit a defendant in a criminal action to bail and to suspend the execution of his sentence during the pendency of his appeal is as prescribed by law.").

**{¶38}** Thus, under R.C. 2949.02(A) and R.C. 2953.09(2)(a) the common pleas court has discretion to suspend execution of the "sentence or judgment imposed" pending appeal. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

---

the defendant's other assignments of error.

{¶39} "Sentence" is defined in R.C. 2929.01(EE) as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." A "sanction" is "any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense." R.C. 2929.01(DD). "Simply put, a sentence is a penalty or combination of penalties imposed on a defendant as punishment for the offense he or she is found guilty of committing." *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 28. As the state acknowledges, the Ohio Supreme Court has held that the sex offender registration requirements at issue here are punitive. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 15 ("Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive."); *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 9 ("We * * * have held that the enhanced sex-offender reporting and notification requirements contained in R.C. Chapter 2950 enacted by Am.Sub.S.B. No. 10 * * * are punitive in nature."); *see also State v. Lawson*, 1st Dist. Hamilton Nos. C-120077 and C-120067, 2012-Ohio-5281, ¶ 18 ("S.B. 10's sex-offender registration requirements are part of a sex offender's sentence"), citing *Williams*, at ¶ 10-20; *State v. Thomas*, 1st Dist. Hamilton No. C-150294, 2016-Ohio-501, ¶ 7 (The Adam Walsh Act "made registration, verification, and community notification requirements part of the penalty for the offense"). Thus, "sentence" as used in R.C. 2949.02(A) and 2953.09(A)(2)(a) includes the requirement that a defendant register as a sex offender. There is no exception set forth in any of the relevant rules or statutes prohibiting a stay or suspension of the sex offender registration requirements imposed as part of a defendant's sentence pending appeal. Therefore, the trial court had the authority to suspend execution of the sex offender registration requirements imposed as part of Martinez's sentence during the pendency of his appeal to this court.

*Compare State v. Myers*, 150 N.M. 1, 2011-NMSC-028, 256 P.3d 13, ¶ 41-45 (trial judge lacked authority to stay Sex Offender Registration and Notification Act ("SORNA") registration pending defendant's appeal of his conviction, reasoning that under New Mexico law, SORNA is "'primarily remedial in purpose and effect'" and SORNA registration does not "'constitute punishment for a crime'"), quoting *State v. Moore*, 135 N.M. 210, 2004-NMCA-35, 86 P.3d 635, ¶ 24.

**{¶40}** The state also argues that the trial court's decision to stay execution of sex offender registration requirements in this case was contrary to Crim.R. 46(C) and was, therefore, an abuse of discretion.

**{¶41}** Crim.R. 46(C) provides:

In determining the types, amounts, and conditions of bail, the court shall consider all relevant information, including but not limited to:

(1)   The nature and circumstances of the crime charged, and specifically whether the defendant used or had access to a weapon;

(2)   The weight of the evidence against the defendant;

(3)   The confirmation of the defendant's identity;

(4)   The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;

(5)   Whether the defendant is on probation, a community control sanction, parole, post-release control, bail, or under a court protection order.

**{¶42}**   The state argues that because the defendant's identity was not in dispute and Martinez was found guilty after a bench trial, Crim.R. 46(C)(2)-(3) compels the conclusion that the trial court abused its discretion in staying execution of the sex offender registration requirements.

**{¶43}** Crim.R. 46(C) addresses the factors to be considered "[i]n determining the types, amounts, and conditions of bail." As such, it is not directly applicable to the issue presented here, i.e., whether execution of a sentence should be stayed. However, to the extent it applies — or may otherwise serve as a guideline for courts in determining whether a request for a stay of execution of a sentence should be granted — it requires only that the trial "consider" "all relevant information," including the specified factors. It does not state that any one factor or group of factors is determinative.

**{¶44}** The offense giving rise to Martinez's sentence, importuning in violation of R.C. 2907.07(B)(1), is a fifth-degree felony. The record reflects that at the time of his sentencing, Martinez was 67, was married with five children and had retired from the Parma City Schools. Martinez has a limited criminal history — i.e., he was convicted of an unrelated misdemeanor charge in 1990 and a DUI in 1992. There is nothing in the record to suggest that Martinez had any current issue with drug or alcohol abuse. There was no showing of any likely threat of harm to the public if Martinez's sentence was suspended pending his appeal. Although, based on its statements during the suppression and sentencing hearings, the trial court felt compelled by existing case law to deny Martinez's motion to suppress, it also apparently believed that Martinez had a reasonable argument for appeal that evidence of his confessions should have been suppressed.

**{¶45}** On the record before us, although we do not believe it would have been an abuse of discretion for the trial court to have denied Martinez's motion to stay execution of the sex offender registration requirements imposed as part of his sentence, we cannot say that the trial court acted arbitrarily, unreasonably or unconscionably in granting Martinez's motion to stay

execution of the sex offender registration requirements pending appeal to this court. Accordingly, the state's assignments of error are overruled.

**{¶46}** Judgment affirmed; case remanded to the trial court for execution of the sentence imposed.

It is ordered that the state and Martinez share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR