[Cite as *State v. Elliott*, 2011-Ohio-1746.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No: 10CA21 |
| | : | |
| v. | : | |
| | : | <u>DECISION AND</u> |
| RANDAL ELLIOTT, JR., | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | File-stamped date:  4-07-11 |

_____

<u>APPEARANCES:</u>

Chandra L. Ontko, Cambridge, Ohio, for Appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** Randal Elliott, Jr. (hereinafter "Elliott"), appeals the judgment of the Washington County Court of Common Pleas, which found him guilty of burglary.  On appeal, Elliott claims that he did not voluntarily confess to the burglary during a conversation with a sheriff's deputy.  As a result, Elliott claims that the trial court should have suppressed his confession.  Because the police did not use any coercive tactics, we disagree.  Accordingly, we overrule Elliott's assignment of error and affirm the judgment of the trial court.

I.

**{¶2}** Jesse Barnett (hereinafter "Barnett") spent the first few months of 2009 in Coshocton.  At that time, Barnett also maintained a home in Washington County.  On

March 20, 2009, Barnett's family members noticed that various items were missing from the Washington County home. Shortly thereafter, Barnett's daughter reported the missing items to the Washington County Sheriff's Department.

{¶3}    Deputy Kelly Travaglio (hereinafter "Travaglio") investigated the missing items. (Elliott's trial counsel pointed out that Travaglio is an attractive, twenty-eight year old female.) During her investigation, Travaglio determined that Elliott should be questioned about the incident. Apparently, Elliott's father lives near Barnett's Washington County home, and Elliott was suspected of earlier break-ins in the neighborhood. Elliott somehow learned that Travaglio was trying to contact him, so Elliott introduced himself to Travaglio while she was responding to an unrelated matter.

{¶4}    Travaglio told Elliott about the missing items and asked if she could "look around" his trailer. Transcript at 270. Elliott agreed, and, while at his trailer, Travaglio discovered items that matched the descriptions of the missing items. Travaglio asked if she could photograph these items, and Elliott agreed that she could.

{¶5}    Barnett's family members recognized some of the items in Travaglio's photographs, and Travaglio linked some of the items to Barnett's home. As a result, Travaglio returned to Elliott's trailer. After Elliott invited her in, Travaglio asked if she could take several items from the trailer into custody. Elliott agreed that she could, and he offered explanations for how he acquired the various items. For example, Elliott claimed that he bought some of the items at a yard sale.

{¶6}    As Travaglio was leaving, she grabbed a lamp that was next to Elliott's couch. Travaglio described Elliott's reaction in the following manner: "I said, you know what, I'm

going to take [this lamp], just in case it was hers. And [Elliott] got upset about that, and he says, 'Well, I -- I'd better get that back. That -- that's mine.'

**{¶7}** "* * *

**{¶8}** "And I said, 'Well, so what you're -- are you saying that all of the other items that I took aren't yours?'

**{¶9}** "And he said -- he stumbled over his words, and he says, 'Well, maybe' -- he said something like -- and I have a quote, I direct quoted him, I mean, this is not a quote now, but he said something like, 'I should talk to my lawyer.'

**{¶10}** "And I left at that time. I had no -- no further questions. I felt that I upset him and I was fine with that, quite honestly. I didn't have any other questions for him then." Transcript at 44. Later, Travaglio learned that the lamp was not one of the items missing from Barnett's home.

**{¶11}** About a month later, Travaglio returned to Elliott's trailer a third time. It was during this third visit that Elliott confessed to stealing the items from Barnett's home. Travaglio described the third visit as follows: "He invited me in. I sat down on his couch, and I believe he sat down on his chair, and I told him that I would like to speak with him in reference to this incident. I told him he was not under arrest. I told him he was free to leave or ask me to leave at any time. And I advised him that -- that the evidence that I had against him, and I told him that it was -- I basically told him it was in his best interest to cooperate, that I'd appreciate cooperation with him. I kind of just want to know what happened on that day. * * *

**{¶12}** "Q. Did you at -- at some point, did you tell him that he was not going to be arrested that day?

{¶13}     "A. Yes, I -- I told him that he was not under arrest, and I told him that I was not going to arrest him on that day, no matter what.  I said, no matter what you tell me, understand I'm not going to take you to jail.  I said, I will summons you into court on the charg-- charges filed against you.

{¶14}     "Q. Okay.  Now, where exactly did this interview take place?

{¶15}     "A. In his house.  In his -- in his living room.

{¶16}     "Q. Would it be fair to say that he was a suspect in your mind at that time?

{¶17}     "A. Absolutely.

{¶18}     "* * *

{¶19}     "Q. Was his freedom of movement restricted in any way?

{¶20}     "A. No.

{¶21}     "Q. Was he free to get up and walk around the house?

{¶22}     "A. Yes.

{¶23}     "Q. Could he have left?

{¶24}     "A. Yes.

{¶25}     "Q. Did you handcuff him or place him into any other type of physical restraint?

{¶26}     "A. No.

{¶27}     "Q. Were there any threats made by you or any other officer during the course of the interrogation?

{¶28}     "A. No.

{¶29}     "Q. Was he physically intimidated by you or any other officer during the course of the interrogation?

**{¶30}**       "A.  No.  I didn't see any signs of that, no.

**{¶31}**       "Q. Was he verbally dominated during the interrogation?

**{¶32}**       "A.  No.

**{¶33}**       "Q. Did you yell at him?

**{¶34}**       "A.  No.

**{¶35}**       "Q. Or swear at him?

**{¶36}**       "A.  No.  No, sir.

**{¶37}**       "Q. And again, this was his residence?

**{¶38}**       "A.  Yes."  Transcript at 47-50.

**{¶39}**       Travaglio further testified that she did not trick or coerce Elliott into speaking about the missing items.  Rather, Travaglio claimed that Elliott was "perfectly willing" to speak about the incident.  Transcript at 50.  At some point during the conversation, Elliott confessed to (1) breaking into Barnett's home and (2) stealing the various items.  Elliott then gave a written statement that described the burglary.  Finally, as Travaglio promised, she did not arrest Elliott that day.

**{¶40}**       On July 31, 2009, a Washington County Grand Jury indicted Elliott for burglary in violation of R.C. 2911.12(A)(3).  On May 25, 2010, Elliott filed a motion to suppress his confession to Travaglio.  The trial court denied the motion, and Elliott proceeded to trial.  Eventually, a jury found Elliott guilty of burglary, and the trial court sentenced Elliott accordingly.

**{¶41}**       Elliott appeals and asserts the following assignment of error: "THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS HIS CONFESSION."

II.

**{¶42}** In his sole assignment of error, Elliott contends that the trial court should have suppressed his confession to Travaglio. Essentially, Elliott argues that he did not voluntarily confess during Travaglio's third visit to his trailer. However, because Travaglio did not use coercive tactics, we disagree.

**{¶43}** We use the mixed-question-of-law-and-fact standard to review a motion-to-suppress-evidence decision. See *State v. Hurst*, Washington App. No. 08CA43, 2009-Ohio-3127, at ¶57 (citations omitted). At a suppression hearing, the trial court assumes the role of trier of fact. Id. As a result, the trial court is in the best position to resolve questions of fact and evaluate witness credibility. Id., citing *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104. We must accept the trial court's factual findings if those findings are supported by some competent, credible evidence. *Hurst* at ¶57 (citations omitted). Then, we apply the relevant law to the trial court's factual findings. See id. An appellate court reviews the trial court's application of the law de novo. Id.

**{¶44}** On appeal, Elliott claims that he did not voluntarily confess to the burglary. "Voluntariness of a confession is determined based on the totality of the circumstances. *State v. Edwards* (1976), 49 Ohio St.2d 31[, at] paragraph two of the syllabus. However, the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness. *Colorado v. Connelly* (1986), 479 U.S. 157, 167[.] Hence, we need not assess the totality of the circumstances unless we first find that [Travaglio] used a coercive tactic. *State v. Treesh*[,] 90 Ohio St.3d 460, 472[, 2001-Ohio-4.]" *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, at ¶71.

**{¶45}** Here, Elliott does not expressly argue that Travaglio used inherently coercive tactics. Instead, Elliott skips straight to an argument under the totality-of-the-circumstances test. See *Edwards* at paragraph two of the syllabus (describing the totality-of-the-circumstances test); *State v. Slagle* (1992), 65 Ohio St.3d 597, 600 (same). Nevertheless, we will examine Elliott's argument to determine whether any of the complained-of actions constitute coercive tactics. "'To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity.'" *State v. Humphrey*, Ross App. No. 10CA3150, 2010-Ohio-5950, at ¶18, quoting *United States v. Rigsby* (C.A.6, 1991), 943 F.2d 631, 635.

**{¶46}** First, Elliott argues that Travaglio asked "very leading questions, requiring [Elliott] to answer yes or no, as opposed to open ended questions." Brief for Appellant at 11. However, "the use of leading questions does not coerce an individual to submit to those questions." *State v. Lewis*, Mahoning App. No. 03 MA 36, 2005-Ohio-2699, at ¶16. Therefore, absent other evidence of coercion, the use of leading questions was neither (1) objectively coercive nor (2) sufficient to overcome Elliott's will.

**{¶47}** Next, Elliott argues that he was induced to cooperate because Travaglio promised that Elliott would not go to jail that day. We acknowledge that "'a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary.'" *Humphrey* at ¶20, quoting *United States v. Wrice* (C.A.6, 1992), 954 F.2d 406, 411. But we also recognize that promises of leniency may be coercive *only* if they are broken or illusory. See *Humphrey* at ¶20, citing *United States v. Johnson* (C.A.6,

2003), 351 F.3d 254, 262.  And here, Travaglio fulfilled her promise to Elliott – that is, she did not take him to jail that day.  Therefore, because it was not broken or illusory, Travaglio's promise was not coercive in nature.

**{¶48}** Moreover, after reviewing the entire record, it is clear that Travaglio did not engage in any coercive tactics.  The confession took place at Elliott's residence, where Elliott and Travaglio engaged in small talk.  In fact, Travaglio described the encounter as "laid back."  Transcript at 54.  Travaglio did not restrain, threaten, or intimidate Elliott in any way.  And finally, we reject the notion that Travaglio being young and attractive somehow coerced Elliott into confessing.  Simply put, there is no evidence that Travaglio engaged in any coercive tactics.

**{¶49}** Because Travaglio did not engage in coercive tactics, we need not assess Elliott's arguments under the totality-of-the-circumstances test.  See *Perez* at ¶71.  Accordingly, we overrule Elliott's sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Harsha, P.J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

BY:_____
        Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**