[Cite as *St. James Therapy Ctr., Ltd. v. Gomez Ents.*, 2014-Ohio-4116.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

St. James Therapy Center, Ltd.                Court of Appeals No. L-13-1279

    Appellant/Cross-Appellee              Trial Court No. CI0201201288

v.

Gomez Enterprises                             **DECISION AND JUDGMENT**

    Appellee/Cross-Appellant             Decided:  September 19, 2014

* * * * *

John J. McHugh, III, and Matthew M. McHugh, for appellant/cross-appellee.

Gerald R. Kowalski, Pariss M. Coleman, II, and Meghan Anderson Roth,
for appellant/cross-appellee.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} This is an appeal and cross-appeal from the judgment of the Lucas County

Court of Common Pleas, which granted appellee/cross-appellant's, Gomez Enterprises,

motion for summary judgment on appellant/cross-appellee's, St. James Therapy Center

("St. James"), claim for breach of a lease agreement.  We affirm.

## A. Facts and Procedural Background

{¶ 2} St. James is a manager-managed limited liability company that was formed in 2001 to provide physical therapy services. The initial members of St. James were Laurie Livingston, Joe Gomez as Trustee of the Joseph Gomez Living Trust, Ricky Gomez, Mobility Rehabilitation Specialists, Inc., and MWG, Inc. Livingston was named the manager and clinical director. Specifically, Section 5.1 of the operating agreement provided,

> The Company shall be managed by Lauri [sic] Livingston in the capacity of Clinical Director and as such is authorized to manage the physical therapy and rehabilitation facility and the care of patients in her professional discretion. She shall have the power and authority to cause the company to conduct its business in the ordinary course and to bind the Company in the ordinary course of business. Any action or transaction outside of the ordinary course of the Company's business including, but not limited to the purchase or sale of Company property with a value of $500.00 or more, the borrowing of funds and the pledge of Company property is authorized only upon a determination made by the Members holding a majority of the Percentages.

{¶ 3} Concurrent with its creation, St. James entered into a lease agreement with Gomez Enterprises, of which Joe Gomez was also a member, to lease 1,000 square feet of

2.

space on the first floor of the St. James Club. In 2004, it became apparent that St. James needed additional space, so it negotiated a second lease agreement with Gomez Enterprises for the exclusive use of approximately 2,500 square feet on the second floor of the St. James Club. The 2004 lease, which was signed on behalf of St. James by Livingston alone, is the subject of the present action.

{¶ 4} In 2005, Livingston formed a separate company, Ohio Vestibular & Balance Centers, Inc. ("Ohio Vestibular"), to provide physical therapy treatment for vestibular and balance disorders. Notably, the St. James operating agreement specifically permitted its members to pursue interests in competing organizations. Nevertheless, it was understood at the time that Ohio Vestibular would provide treatments that were not offered by St. James, and that the two companies would benefit from cross-referrals. In mid-2006, Ohio Vestibular entered into an oral agreement with Gomez Enterprises for the exclusive use of 1,400 square feet of space also on the second floor of the St. James Club.

{¶ 5} Although the lease agreements provided for exclusive use, St. James and Ohio Vestibular shared space at the front desk, lobby, bathroom, kitchen, and in part of the gym. This arrangement existed from mid-2006 through August 2007 when the parties had a falling out and Gomez Enterprises evicted Ohio Vestibular. At the same time, St. James terminated Livingston's managerial position.

3.

{¶ 6} Thereafter, Livingston, along with Marianne Keller and Ohio Vestibular,[1] filed suit against St. James and Gomez Enterprises ("the Ohio Vestibular action"), alleging several claims including wrongful termination, breach of contract, and intentional interference with business relations. St. James responded by filing counterclaims including breach of fiduciary duty, breach of the operating agreement, and intentional interference with contractual and business relations. Gomez Enterprises also filed counterclaims against the plaintiffs for rents due and owing. Before trial, Livingston and the other plaintiffs reached a settlement agreement with Gomez Enterprises resulting in the claims between them being dismissed. The remaining claims between the plaintiffs and St. James were tried to a jury over the course of 18 days. Ultimately, the jury returned a verdict in favor of the plaintiffs on one of their 11 claims, and in favor of the counterclaimants on all 13 of their counterclaims.

{¶ 7} Several months after the trial, St. James initiated the present lawsuit against Gomez Enterprises for breach of the 2004 lease agreement through the renting of space to Ohio Vestibular that was to be used exclusively by St. James. The complaint sought damages, the offset from future rents of the cost of enforcing the agreement, and a declaratory judgment that St. James is entitled to offset the costs against any claim for unpaid rents.

{¶ 8} Gomez Enterprises moved for summary judgment, advancing several arguments. First, it argued that St. James waived the exclusive use provision through the

---

[1] Keller, an employee of St. James, formed Ohio Vestibular with Livingston.

4.

actions of Livingston, and through the knowledge and acquiescence of the other members of St. James, excluding MWG, Inc. Gomez Enterprises relied on testimony from the Ohio Vestibular action that Livingston, Michael Shoen,[2] and both Gomez members of St. James all knew about the relationship and sharing of space between St. James and Ohio Vestibular. Further, Gomez Enterprises submitted a letter from Duke Wheeler, the owner and controller of MWG, Inc., which stated that Wheeler no longer wished to have an interest in St. James. Thus, Gomez Enterprises contended that all of the parties either knew that Ohio Vestibular and St. James were sharing space and did not object to it, or, in the case of Wheeler, expressly disavowed any interest in the affairs of St. James. Therefore, Gomez Enterprises concluded that St. James waived the exclusive use provision.

{¶ 9} In addition to the waiver argument, Gomez Enterprises alternatively argued that St. James' claim was barred by res judicata and collateral estoppel based on St. James' failure to raise the claim in the Ohio Vestibular action, or by the doctrine of laches based on St. James' delay in waiting to bring the claim until over four years had passed following Ohio Vestibular's eviction.

{¶ 10} St. James responded to the motion for summary judgment, first arguing that Livingston's and Keller's testimony from the Ohio Vestibular action could not be relied upon for purposes of summary judgment because the jury found against them on all of

---

[2] Michael Shoen was the founder of Mobility Rehabilitation Specialists, Inc., a member of St. James.

5.

their claims in the prior action.  Notably, though, St. James did not submit any evidence to contradict the testimony provided by Gomez Enterprises.  Next, St. James argued that Livingston's actions were outside of the ordinary course of business, and thus were not authorized by the operating agreement.  St. James concluded, therefore, that any waiver of the exclusive use provision based on her conduct was not binding on the company.  Furthermore, because the remaining members of St. James did not authorize waiver of the exclusive use provision in a meeting memorialized in writing, no waiver existed.  Finally, St. James disputed Gomez Enterprises' arguments regarding res judicata and laches.

{¶ 11} The trial court held a hearing on Gomez Enterprises' motion, after which it ordered further briefing on the duties of a non-managing member of a limited liability company.  Following the briefing, the trial court entered its judgment in favor of Gomez Enterprises.  The trial court rejected Gomez Enterprises' res judicata and laches arguments, but held that the undisputed actions of St. James' members "constitute a waiver of the exclusivity provision of the St. James Lease and thus, bars [St. James'] claim for breach of the lease agreement against [Gomez Enterprises]."  This appeal and cross-appeal followed.

## B.  Assignments of Error

{¶ 12} On appeal, St. James has presented the following assignments of error for our review:

6.

1.  The trial court erred prejudicially in ruling as a matter of law that the inaction of non-managing members of St. James Therapy Center, Ltd. constituted a waiver of the exclusivity provision of its lease with Gomez Enterprises.

2.  The trial court erred prejudicially in ruling as a matter of law that appellee met its burden under Civ.R. 56(C), thus shifting the burden to appellant.

{¶ 13} Gomez Enterprises has cross-appealed from the trial court's judgment, also asserting two assignments of error:

1.  The trial court erred in ruling as a matter of law that the current action for breach of lease was not barred by the doctrines of *res judicata* and collateral estoppel.

2.  The trial court erred in ruling as a matter of law that the current action for breach of lease was not barred by the doctrine of laches.

## II.  Analysis

{¶ 14} We review summary judgment decisions de novo, applying the same standard as the trial court.  *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  Applying Civ.R. 56(C), summary judgment is appropriate where (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but

7.

one conclusion, and viewing the evidence in the light most favorable to the non-moving party, that conclusion is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 15} Because we find St. James' assignments of error determinative of this appeal, we will address them first, beginning with its second assignment of error.

### A.  Testimony from a Prior Proceeding

{¶ 16} In its second assignment of error, St. James argues that Gomez Enterprises did not produce evidence sufficient to satisfy its initial burden under Civ.R. 56.  In particular, St. James contends that the relied-upon testimony from Livingston in the Ohio Vestibular action is not sufficient to support a motion for summary judgment because the jury in that prior action rejected all of her claims and thus found her testimony to be decidedly not credible.[3]  Moreover, St. James argues that it is entitled to have an inference drawn in its favor that Livingston's testimony is dishonest and self-serving in light of the jury verdict.  Thus, St. James concludes that Gomez Enterprises failed to satisfy its initial burden that no genuine issue of material fact existed.

{¶ 17} Gomez Enterprises, on the other hand, counters that the jury in the Ohio Vestibular action did not make any explicit determination regarding the credibility of

---

[3] We note that the use of testimony from a different proceeding is permitted under Civ.R. 56(C).  The Staff Note to the July 1, 1999 Amendment to Civ.R. 56 clarifies, "The prior rule provided that 'transcripts of evidence in the pending case' was one of the items that could be considered in deciding a motion for summary judgment.  The 1999 amendment deleted 'in the pending case' so that transcripts of evidence from another case can be filed and considered in deciding the motion."

8.

Livingston's testimony. Thus, the trial court should not presume that Livingston's testimony is entirely dishonest and self-serving. In addition, Gomez Enterprises points out that it relied not only on Livingston's testimony, but also on the testimony from five other individuals in support of its motion for summary judgment. Therefore, Gomez Enterprises agrees with the conclusion of the trial court that "there is nothing in any of the specific verdicts nor has [St. James] cited to any 'conflicting testimony' in the transcript which creates any question of fact from that which is before the Court here."

{¶ 18} Distilled to its core, St. James' argument is that Gomez Enterprises did not meet its initial burden on summary judgment because Livingston's prior testimony is not credible. However, it is not the role of a trial court to determine witness credibility on a motion for summary judgment. As we have stated,

> The purpose of summary judgment is not to try issues of fact.
> Rather, it is to determine whether triable issues of fact exist. *Fuller v. German Motor Sales, Inc.* (1988), 51 Ohio App.3d 101, 103. Therefore, in determining a motion for summary judgment, a trial court does not assess the credibility of the witnesses or weigh their testimony. *Halley v. Grant Trucking, Inc.* (1990), 67 Ohio App.3d 357, 364; *Paul v. Uniroyal Plastics Co.* (1988), 62 Ohio App.3d 277, 282. *Watts v. Watts*, 6th Dist. Lucas No. CV 91-0302, 1994 WL 88765, *4 (Mar. 18, 1994)

Instead, whether the testimony from the prior action is credible or ultimately found to be true is a question reserved for the jury *in the present action*. *See Turner v. Turner*, 67

Ohio St.3d 337, 344, 617 N.E.2d 1123 (1993) ("[I]t is for the jury to determine the credibility of the witnesses and the weight to be given their testimony").

{¶ 19} Moreover, St. James' argument that the issue of Livingston's credibility has already been determined by a jury in the Ohio Vestibular action, and that the jury's determination should control here, is effectively an application of the collateral estoppel doctrine. Collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). However, St. James' collateral estoppel argument fails because the issue of Livingston's credibility as to the facts surrounding the claim for breach of the exclusive use provision of the 2004 lease was not "actually and necessarily litigated and determined" in the Ohio Vestibular action. *Id.* The jury verdict forms from the Ohio Vestibular action—which were attached to Gomez Enterprises' motion for summary judgment—did not deal with the breach of the exclusive use provision, nor did they make an explicit determination regarding Livingston's credibility. Thus, the jury's determination in the Ohio Vestibular action is inconsequential here relative to Livingston's credibility.

{¶ 20} Ultimately, in this case, Gomez Enterprises supported its motion for summary judgment with appropriate Civ.R. 56(C) material in the form of testimony from

10.

a prior action. That testimony established that all parties, excluding MWG, Inc., knew that Livingston was forming Ohio Vestibular, and knew that Ohio Vestibular was to be located at the St. James Club and would share some space with St. James. Furthermore, the material established that this arrangement lasted from mid-2006 through August 2007. Finally, the material established that, at the outset, the intent of all of the parties was for Ohio Vestibular and St. James to have a symbiotic relationship where each would benefit from the increase in and retention of patients. It is possible that a jury in the present action may have determined that this testimony is not credible, and that the facts did not occur as the witnesses testified. However, in order for the matter to reach the jury for such a determination, it is incumbent upon St. James to provide Civ.R. 56(C) material that creates a genuine dispute regarding those facts. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). St. James did not provide such material. Therefore, we hold that the trial court did not err in determining that Gomez Enterprises' motion was properly supported, and that no genuine issue of material fact existed.

{¶ 21} Accordingly, St. James' second assignment of error is not well-taken.

## B. Waiver of the Exclusivity Provision

{¶ 22} In its first assignment of error, St. James argues that the trial court erred when it determined, as a matter of law, that St. James waived the exclusive use provision.

{¶ 23} "Waiver as applied to contracts is a voluntary relinquishment of a known right." *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 2 N.E.2d 501 (1936),

11.

paragraph one of the syllabus. "It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform." *Id.* at 198.

{¶ 24} The foundation of St. James' argument is that Livingston's conduct in acquiescing to the shared space arrangement with Ohio Vestibular was outside the ordinary course of business under the St. James operating agreement, and thus was not binding on the company. *See* R.C. 1705.25(B)(2) ("Unless it is authorized by the members, an act of a manager that is not apparently for the carrying on the business of a limited liability company in the usual way does not bind the company"). St. James, without citing any supporting evidence, states, "Livingston's decision not to object to the breach of the lease was motivated by her own financial self-interest, as her ability to derive income from the operations of [Ohio Vestibular] would have been seriously impaired, if not destroyed, had [St. James] enforced the exclusivity provision of its lease." St. James contends that because she was acting in her own self-interest, Livingston's actions could not, by law, be for the purpose of carrying on St. James' business.

{¶ 25} We disagree. As discussed above, the uncontested facts show that the intention was for St. James and Ohio Vestibular to mutually benefit from their co-existence. Thus, we cannot conclude that Livingston was acting solely in her self-

interest, to the exclusion of St. James' interest. Therefore, St. James' argument that Livingston's actions were, by law, outside the ordinary course of business is without merit.

{¶ 26} Furthermore, when viewed as a whole, we hold that the actions of the parties constituted a waiver of the exclusive use provision. Livingston, as the manager of St. James, clearly acquiesced in the sharing of space with Ohio Vestibular since she was the one that pursued the arrangement. In addition, Michael Shoen on behalf of Mobility Rehabilitation Specialists, Inc. and the Gomez members knew that Livingston was forming Ohio Vestibular, knew that Ohio Vestibular would purportedly benefit St. James, and knew that the two entities were sharing space at the St. James Club. Finally, despite everyone's knowledge, this relationship lasted for over one year, clearly establishing a course of conduct under which St. James did not seek to enforce the exclusive use provision. Therefore, we hold that reasonable minds could only conclude that St. James waived the exclusive use provision of the 2004 lease agreement. As a result, summary judgment in favor of Gomez Enterprises on the breach of lease claim is appropriate.

{¶ 27} Accordingly, St. James' first assignment of error is not well-taken.

{¶ 28} Having found St. James' assignments of error not well-taken, Gomez Enterprises' assignments of error on cross-appeal are moot and will not be considered. *See* App.R. 12(A)(1)(c).

13.

### III. Conclusion

**{¶ 29}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. St. James is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.