[Cite as *State v. McClellan*, 2019-Ohio-4339.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 18CA11 |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| BENJAMIN MCCLELLAN, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES:</u>

Adam Burke and Eric E. Willison, Columbus, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

_____

Smith, P. J.

{¶1} On May 9, 2018, Benjamin McClellan entered a no contest plea to one count of rape, R.C. 2907.02(A)(2), a first-degree felony. McClellan appeals the trial court's entry of March 21, 2018, in which the trial court overruled McClellan's motion to suppress his videotaped confession to consensual sex with a minor victim. McClellan contends the trial court erred when it denied his motion because his confession was obtained in contravention of his Fifth Amendment rights under the United States Constitution. Based upon our review, we find no coercive police activity

occurred and thus, find no merit to McClellan's argument. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

## FACTS

{¶2} Benjamin McClellan, (hereinafter "Appellant"), was indicted by the Highland County Grand Jury on two counts of rape, violations of R.C. 2907.02(A)(1)(b) and R.C. 2907.02(A)(2). Both counts are felonies of the first degree. Count One specified unlawful sexual conduct, on or about April 15, 2017, with a person being less that thirteen years of age. Count Two alleged sexual conduct, on or about August 28, 2017, compelled by force or threat of force. On December 8, 2017, Appellant was arraigned, entered pleas of not guilty, and was appointed counsel. Pretrial discovery ensued.

{¶3} The counts arose as a result of a report made to Sergeant Aaron Reynolds. The following facts have been obtained from Reynolds' affidavit filed in support of the criminal complaint. On August 31, 2017, A.E. presented to the Hillsboro Police Department with Janet Fair, an employee of the Scioto Paint Valley Mental Health Center. A.E. reported that

Appellant and she resided in the same household[1] and that sometime during Easter break in 2017, Appellant followed her into her bedroom while she was changing clothes. Appellant allegedly forced her to allow him to have sex with her and threatened to hurt her if she told anyone. A.E. stated that after this occurred, she stayed with other family members over the summer.

{¶4} A.E. also reported that when she returned home for the school year in late August, 2017, "[I]t started again." A.E. tried to avoid Appellant but she woke up one time and Appellant was having sex with her. She was unable to stop him.

{¶5} A.E. was sent to Cincinnati Children's Hospital where a sexual assault collection kit was obtained. Sergeant Reynolds obtained A.E.'s gym shorts and tee shirt that she wore at the time of the most recently-alleged crime. A.E.'s clothes were sent to the Ohio Bureau of Investigation's (BCI) crime lab.

{¶6} On September 1, 2017, Appellant presented to the Hillsboro Police Department and spoke with Reynolds. Appellant was first advised of his *Miranda* rights. Appellant denied raping A.E. or ever having sexual intercourse with her. He explained while A.E. was out of town during the

---

[1] The record is not clear as to the familial relationship between Appellant and A.E. Sergeant Reynolds later testified that A.E. referred to Appellant as her cousin.

summer he had slept in her bed, masturbated, and had intercourse there with other females. Appellant stated his DNA "should not be" on her clothing.

{¶7} On September 15, 2017, results obtained from BCI indicated a sperm cell was found on the inner crotch area of A.E.'s shorts. On September 18, 2017, Appellant returned to the police department. A short interview was conducted. Appellant was again advised of his *Miranda* rights. Appellant consented to collection of his DNA for comparison.

{¶8} On October 27, 2017, BCI's representative reported that the sample collected from Appellant matched the sperm cell located on A.E.'s shorts. On the same date, Sergeant Reynolds conducted a third interview with Appellant at the police station. The interview was recorded. Reynolds began the interview with Appellant by again explaining Appellant's *Miranda* rights.

{¶9} According to the transcript of the suppression hearing and the recorded interview, Sergeant Reynolds next explained that the DNA results revealed Appellant's sperm inside A.E.'s shorts. Sergeant Reynolds further explained that the BCI scientist told him that it would have had to be in A.E. or on her to fall onto the crotch area. Sergeant Reynolds stated, "So with that being said, I think now is the time to be very forthcoming."

{¶10} Appellant immediately denied having any sexual conduct with A.E. He informed that it was possible that he had masturbated in the bathroom area, picked up some clothes to wipe himself, and the sperm transferred in that manner to A.E.'s clothes. Sergeant Reynolds' statements during the interview, which Appellant challenges as coercive, are set forth fully below. Ultimately, Appellant confessed as follows:

> "Um so one night, I got really, really drunk. It was all - - I had consensual sex with A. E., one time. I was really, really drunk. I got up to go throw up in the bathroom. She followed me in and it just kind of happened."

Thereafter, Appellant was immediately placed under arrest.

{¶11} During the pretrial proceedings, Appellant's counsel filed a motion to suppress Appellant's confession to consensual sex with A.E. Appellant asserted that his statements were not voluntarily given. The thrust of Appellant's argument was that his confession was the byproduct of coercive police activity. Appellant pointed out that Sergeant Reynolds repeatedly misstated the legal consequences of admitting to consensual sex rather than forcible sex. Thus, Appellant concluded that his statement was obtained in violation of his Fifth Amendment right against self-incrimination and must be suppressed.

{¶12} Appellee filed a response. At the March 19, 2018 suppression hearing, the State introduced the third interview as State's Exhibit 1. On

March 21, 2018, the trial court filed its decision overruling Appellant's

motion to suppress. The trial court's ruling stated in pertinent part:

> The Court finds that the actions of Sergeant Reynolds
>
> were not objectively coercive. He clearly urged the
>
> Defendant to tell the truth and pointed out to him
>
> how the DNA results were evidence of his having
>
> had sexual intercourse with the alleged victim. He
>
> informed him that the alleged victim was claiming the
>
> conduct was forcible which he described as rape while
>
> he believed the conduct could have been consensual.
>
> Sergeant Reynolds did not at any time indicate that if
>
> there had been consensual sex rather than forcible sex
>
> that the Defendant would be given any benefit such as
>
> a lesser prison term. He did not promise not to arrest
>
> him if he confessed. When Defendant asked what would
>
> happen if there had been consensual sex the officer
>
> responded that it depended upon the circumstances
>
> and that he could not say what would happen. In short,
>
> there was no coercion, no inducement, no promise made
>
> to the Defendant that if he gave an incriminating statement

that he would receive any benefit legal or otherwise.

{¶13} On May 9, 2018, Appellant pled no contest to Count Two. Count One was dismissed. The trial court ordered a pre-sentence investigation report. On June 7, 2018, the trial court imposed a prison sentence of seven years. Appellant was ordered to register as a Tier III sex offender. This timely appeal followed.

## ASSIGNMENT OF ERROR

I. "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION."

## A. STANDARD OF REVIEW

{¶14} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Leonard*, 2017-Ohio-1541, 89 N.E.3d 58 (4th Dist.), at ¶ 15, citing, *State v. Gurley,* 2015-Ohio-5361, 54 N.E.3d 768, ¶ 16 (4th Dist.), citing *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.*; *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16, citing *State v.*

*Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist. 2000). However, "[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id*., citing *Roberts* at ¶ 100.

## B.  LEGAL ANALYSIS

{¶15} In the sole assignment of error, Appellant contends that the trial court erred by failing to suppress his confession to consensual sex with A.E. Appellant argues that Sergeant Reynolds emphasized a false distinction between forcible rape and consensual sex throughout the interview. Appellant then connects this distinction to Reynolds' statements suggesting that in order for Appellant to be treated fairly, or perhaps receive more lenient treatment, he would need to confess to having consensual sexual contact.  Appellant concludes that his confession was obtained as a result of police coercion and therefore, his will was overborne, rendering his confession involuntary.  As such, Appellant requests this court find that his confession was involuntary and to further find that the trial court's decision overruling his motion to suppress was in error.

{¶16} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee that no person in any criminal case shall be compelled to be a witness against himself.  The

Fifth Amendment, as well as the Due Process Clause of the Fourteenth Amendment, protects against the concern that coerced confessions are inherently untrustworthy. *Leonard, supra,* at ¶ 17, citing *Dickerson v. United States*, 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt * * * but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape * * * that no credit ought to be given to it." (Quotation omitted.) *Id.*

{¶17} "Voluntariness of a confession is determined based on the totality of the circumstances." *Leonard, supra,* at ¶ 18, quoting, *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 71, citing *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.E.2d 1158 (1978). "However, the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness." *Id.*, citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed. 2d 473 (1986). This court has observed that we need not assess the totality of the circumstances unless we first find that law enforcement officers or other agents of the state

used a coercive tactic. *Leonard, supra,* citing *Connelly,* 107 S. Ct. 515, 93 L.Ed.2d 473.

{¶18} " 'To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity.' " *Leonard, supra*, at ¶ 19, quoting, *State v. Humphrey,* 4th Dist. Ross No. 10CA3150, 2010-Ohio-5950, at ¶ 18, vacated on other grounds, 128 Ohio St.3d 397, 2011-Ohio-1426, 944 N.E.2d 1172, quoting *United States v. Rigsby,* 943 F.2d 631, 635 (6th Cir.1991).

> The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. *People v. Hill*, 66 Cal.2d 536, 549, 58 Cal.Rptr. 340, 426 P.2d 908; *see also State v. Arrington*, 14 Ohio App.3d 111, 115, 470 N.E.2d 211 (6th Dist.1984).
>
> {¶19} As further explained in *Hill*,

When the benefit pointed out by the police to a

suspect is merely that which flows naturally from

a truthful and honest course of conduct, we can

perceive nothing improper in such police activity.

On the other hand, if in addition to the foregoing

benefit, or in the place thereof, the defendant is

given to understand that he might reasonably expect

benefits in the nature of more lenient treatment at the

hands of the police, prosecution or court in consideration

of making a statement, even a truthful one, such motivation

is deemed to render the statement involuntary and inadmissible.

The offer or promise of such benefit need not be expressed,

but may be implied from equivocal language not

otherwise made clear. *Hill* at 549-550, citing *People v. Ditson*,

57 Cal.2d 415, 432, fn. 5, 20 Cal.Rptr. 165, 173, 369 P.2d 714,

722 (petition for writ of cert. dismissed, *Cisneros v. California*,

371 U.S. 937, 83 S.Ct. 311, 9 L.Ed.2d 273) and

*People v. Nelson*, 224 Cal.App.2d 238, 245, fn. 3, 36 Cal.Rptr.

385; *see also State v. Arrington*, *supra*, at 115.

{¶20} This court has also acknowledged that " ' "a promise of lenient

treatment or of immediate release may be so attractive as to render a confession involuntary." ' " *Leonard, supra,* at ¶ 20, quoting *Humphrey* at ¶ 20, quoting *United States v. Wrice,* 954 F.2d 406, 411 (6th Cir.1992). " 'But we also recognize that promises of leniency may be coercive only if they are broken or illusory.' " (Emphasis sic.) *Leonard, supra,* quoting, *State v. Elliott,* 4th Dist. Washington No. 10CA21, 2011-Ohio-1746, at ¶ 47, citing *Humphrey* at ¶ 20, in turn citing United *States v. Johnson,* 351 F.3d 254, 262 (6th Cir.2003). " ' "[F]alse promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving his Fifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired. * * * The simple result is that officers must avoid such promises, which are not proper tools of investigation." ' " *Leonard, supra,* quoting, *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, at ¶ 40, quoting *State v. Petitjean,* 140 Ohio App.3d 517, 534, 748 N.E.2d 133 (2d Dist. 2000).

{¶21} *In Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 Led. 2 694 (1966), the United States Supreme Court applied the protection of the Fifth Amendment right against self-incrimination to police interrogations of individuals in custody. In this case, Appellant

acknowledged and waived his *Miranda* rights before Sergeant Reynolds engaged in a third interview with him. The voluntariness of a confession presents " 'an issue analytically separate from those issues surrounding custodial interrogations and *Miranda* warnings.' " *State v. Scholl,* 10th Dist. Franklin No. 12AP-309, 2012-Ohio-6233, at ¶ 7, quoting, *State v. Walker,* 10th Dist. No. 04AP–1107, 2005–Ohio–3540, citing *State v. Kelly*, 2d Dist. No.2004–CA–20, 2005–Ohio–305. See also *State v. Martinez*, 8th Dist. Cuyahoga Nos. 103572, 103573, 2016-Ohio-5515, at ¶ 29. As evidenced by the recorded interview, Appellant was apprised of his *Miranda* rights and signed a waiver. Thus, *Miranda* is not implicated in this case. We next proceed to analysis of the voluntariness of Appellant's confession.

{¶22} The voluntariness of a confession is a question of law subject to de novo review. *Martinez, supra; State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, at ¶ 35; *State v. Bohanon,* 8th Dist. Cuyahoga No. 89443, 2008–Ohio–1087, ¶ 9, citing *Arizona v. Fulminate,* 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). As we have set forth above, unless Sergeant Reynolds used a coercive tactic, we need not assess the totality of the circumstances. *See Martinez, supra,* at ¶ 30; *State v. Treesh,* 90 Ohio St.3d 460, 472, 2001 Ohio 4, 739 N.E.2d 749 (2001); *State v. Perez,* 124 Ohio St. 3d 122, 2009-Ohio-6179, 920 N.E.2d 104, at ¶ 71.

"Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis." *State v. Clark,* 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

{¶23} The trial court found that Sergeant Reynolds: (1) urged Appellant to tell the truth; (2) pointed out the DNA evidence; (3) advised Appellant that the victim was claiming force; (4) informed Appellant he could not give him legal advice; (5) at no time indicated that if Appellant admitted consensual sex that he would receive a benefit of a lesser prison term; and (6) at no time promised Appellant that he would not arrest him if admitted to consensual sex. Appellant has limited his argument to essentially challenging the finding that he was not promised a benefit if he admitted to consensual sex. Appellant asserts Sergeant Reynolds obtained his confession to consensual sex by suggesting that he must do so in order to be treated fairly. Therefore, we must independently review the trial court's findings to see if they are supported by competent credible evidence.

{¶24} At the outset, we have identified and numbered all of Sergeant Reynolds' statements preceding Appellant's confession which are arguably deceptive and/or coercive. The statements are set forth in the order in which they occurred in the interview and transcript as follows:

1.  "I believe it was probably consensual, and it was just something where you guys were fooling around, and that she was okay with it, and then now she wasn't.  I don't know."

2.  "My job is to find the truth, man.  And if you're not honest with me, if you're not honest with yourself and upfront, it - - you're letting whoever tell all the truth or what their version of the truth is. * * * Right now it looks like A.E.'s telling the whole truth and you're just lying.  You know what I mean?"

3.  "Right now, I'm worried about A.E. claiming you raped her and you guys probably having consensual sex, whatever it was."

4   "So I just need you to be honest about what happened. Okay? And honesty is not absolute what happened, but honesty - - well, I'm sorry.  That—it can't—it doesn't absolve what happened. However, honesty goes a long way.  And if you're not honest, we're left to believe only what one side of the story is telling us."

5.  "If we have the truth from both sides, we can see what happened clearly, and then we can make a good decision.  And you can even rest easy knowing that you're being treated fairly - - which you're being treated fairly anyway.  But, you know, if you know what that (sic.) what happened wasn't what she says happened exactly, but you know something did happen but you're not letting us know that, you're laying - - you're laying your fate in the hopes that we just don't believe her, when you're giving us nothing to believe.  You know what I mean?"

6.  "I don't want you telling me what I want to hear.  I don't want I don't want you to tell me what you think I want to hear.  I just want- - I'm just - - I'm a truth seeker.  Like I said before, my job is to find the truth of what happened. * * * [B]ecause, at the end of the day, I'm just trying to do my job fair and finding the truth."

7.  "[R]ape is you told her if she didn't do it, you were going to hurt her, or you forcibly held her down and did it against her will or you got her intoxicated to the point where she couldn't know

what was going on, and you took advantage of her - - which that's sexual battery.  But certain definitions could be rape."

8. "So I think that something happened consensual.  I think that you both had consensual intercourse together. * * * I think that something happened."

9. "Right now, I'm still trying to figure out whether you and A.E had sex or not.  Not if you raped her, just if you guys had sex. Because I don't believe that rape happened.  I believe that there was sex.  That's what I believe.  But I can't go anywhere until we know what happened.  Do you know what I mean?"

10.  "I can't give legal advice. * * * But, I mean, it could be anything from whatever the judge decides from - - you know, it  depends on the- - it just depends on the circumstances.  * * * You could go to jail.  You could just have to go to court.  You could go to court.  You could get - - you know, the judge has the full discretion. * * * So to be honest with you, I don't know.  I don't know.  * * * I don't know what we're looking at here.   * * * I don't think we're looking at a forcible rape. I don't think that.  You know what I mean?  So that makes a difference."

11. "So like I said, honesty doesn't change what happened, but honesty definitely goes a long way.  So I just need to know what happened, man."

12. "[D]efinitely the evidence that exists here says something happened.  I don't want you to feel like I'm pressuring you or anything.  So I'm going to actually step out of the room. I'm going to give you a few minutes just to think by yourself for a minute.  And I'll be back in and ask you some questions. * * *I want you to think about the evidence we have. * * * I can't begin to take the next path in my investigation if you're not 100 percent honest with me.  And I don't think you're being 100 percent honest with me.  So like I said, I'll give you a minute to breathe, think about it for a minute.  * * * Unless you just want to get this done - - you know what I mean? - - move forward."

{¶25} We begin with Appellant's "false distinction" argument and find it to be similar to a "minimization" argument, which was made on appeal in *State v. Fouts, supra*.  Fouts was convicted of gross sexual imposition and attempted unlawful sexual conduct with a minor.

{¶26} Fouts picked up a 15-year-old family friend in his car to take her back to his house to spend the night with his own 15-year-old daughter. Fouts and his victim had a close relationship and the victim often spent time at the Fouts' home.  She even called Mr. and Mrs. Fouts "mom" and "dad." However, instead of taking the victim directly to his home, Fouts drove her to a secluded wooded area of a high school parking lot and started talking about pornography and his marital problems.  Fouts put the victim on his lap and kissed her neck.  The victim texted Fouts' daughter during and after the incident.

{¶27} At trial, the prosecution introduced screen shots of the victim's text messages.  The jury also watched a 30-minute videotaped interview Fouts had with an officer.  In the interview, Fouts initially lied about the incident but changed his story after he was told that security cameras on the high school parking lot showed his car.  On appeal, Fouts argued that the trial court erred in denying his motion to suppress incriminating statements he made to police.  Fouts argued his statements were involuntary because the

police engaged in deceptive practices by minimizing the seriousness of the offense.

{¶28} In our decision, we observed that deception is a factor that bears on the voluntariness of a defendant's confession, but " 'this factor, standing alone, is not dispositive of the issue.' " *Fouts, supra,* at ¶ 36, quoting *State v. Wiles,* 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991). "[V]ague and indefinite" statements do not render a confession involuntary. *Fouts, supra*; *State v. Osie,* 140 Ohio St.3d 131, 149, 2014–Ohio–2966, 16 N.E.3d 588, ¶ 100 reconsideration denied, 140 Ohio St.3d 1455, 2014– Ohio–4414, 17 N.E.3d 600, ¶ 100 and cert. denied, 135 S.Ct. 1562, 191 L.Ed.2d 649 (2015).  Fouts argued that the investigating officer deceptively minimized his offense by telling him she did not believe he committed rape. Regarding this argument, we stated at ¶ 39:

> We find nothing deceptive about this statement; the
> officer testified that the minor's factual allegations did
> not include rape. The other possible statements in the
> record that arguably minimized Fouts's offense were the
> officer's statement that she believed he "made a mistake"
> and "mistakes can be fixed", and her characterization of
> what might have happened the night before as "iffy."
> However, we find nothing about those vague and indefinite
> statements that would render his confession involuntary.

{¶29} We further noted at ¶ 40:

> Nothing in the officer's interview approaches the level
> of conduct necessary to overcome Fouts's will to remain

silent, or otherwise resulted in a coerced confession.  There
was no "badgering" or threatening by the officer.  The
entire tone of the questioning was casual, conversational,
and cooperative.  There was no hint of coercion or duress
during the interview.  Nor was there anything improper in
the officer's efforts to create a favorable environment for
a confession.  There was nothing false, deceptive or coercing
about her tactic of minimizing the offense by labelling it a
 "mistake" and his behavior as "iffy".

{¶30} Our decision in *Fouts* was cited in the Eighth Appellate

District's decision in *Martinez, supra*.  Martinez appealed a conviction for

importuning in violation of R.C. 2901.07(B)(1).  Martinez, a 66 year-old hall

monitor at Parma High School was investigated and indicted after a 15-year-

old female student reported that he had placed his arm around her shoulder

and made several inappropriate sexual comments to her while escorting her

to class.  Martinez gave incriminating statements to law enforcement officers

at his home and later at the Parma Police Department.

{¶31} After reviewing the student's allegations, Detective Sheridan

discussed the matter with Sergeant Zarzeczny, who offered to accompany

him to Martinez's home.  Sergeant Zareczny was familiar with Martinez and

thought Martinez would feel more comfortable answering questions if the

sergeant was present.  Detective Sheridan secretly recorded the interview

which took place at Martinez's kitchen table.  For a time, Martinez's wife

was present as well.  Detective Sheridan informed Martinez of the

allegations against him.  Martinez acknowledged he knew the student but initially denied putting his arm around her or making sexual comments. Approximately 11 minutes into the interview, Mrs. Martinez left the room.

{¶32} After Mrs. Martinez left, Detective Sheridan told Martinez "man to man" that he knew he was not being truthful.  They told him he was not under arrest because Zareczny knew he was a "good guy," and they did not want to arrest him.  They continued to urge him to "man up," and tell them "what really happened."  Martinez' body language during this portion of the interview was described as "head down in hands," "pale as a ghost," "sweating," "hard time maintaining eye contact," and "trembling."

{¶33} The detectives continued the interrogation, informing Martinez that the student was prepared to testify in court, that there was video surveillance of the incident, and that there was "other evidence" which they declined to disclose.  Approximately 15 minutes into the interview, Martinez admitted putting his arm around the student and making the alleged inappropriate sexual comments.  Martinez was not informed of his *Miranda* rights.

{¶34} After Martinez confessed, he was informed they needed to go to the police station where he could make a more formal confession.  There, Martinez repeated his incriminating statements.  While Martinez raised

issues during a suppression hearing with both interrogations, the trial court

denied Martinez' motion to suppress.  For our purposes, we are concerned

with only analysis of the voluntariness of his at-home interrogation.  The

appellate court in *Martinez* wrote at ¶ 39:

> We have carefully reviewed both the transcript from the suppression
> hearing and the audio recording of Martinez's at-home interrogation.
> While the recording demonstrates that officers used various
> interrogation tactics to encourage Martinez to "tell the truth" during
> the interrogation, including minimizing the conduct involved,
> acknowledging what a "good guy" he is, discussing the "evidence"
> supporting the victim's story, urging him to be honest because it could
> help him and reminding Martinez that "people make mistakes" and
> that he had the love and support of his wife and family who would
> "forgive him," there is nothing to suggest that Martinez was subjected
> to any kind of ''inherently coercive tactic'' that might have made his
> statements involuntary and thus excludable.

{¶35} The appellate court also noted, as we have above, that

admonitions to tell the truth are not coercive in nature.  *Id*. at ¶ 32.

"Likewise, a police officer's statement to a suspect that a confession 'will be

helpful' * * * does not invalidate an otherwise legal confession."  *Id*.,

quoting *State v. Jones, 2014*-Ohio-4116, 43 N.E. 3d 833, (2nd Dist.), at ¶ 19.

The trial court also noted at ¶ 33:

> Moreover, the "totality of the circumstances" does not support the
> conclusion that Martinez's will was overborne. * * * The record
> reflects that Martinez was 66 at the time of his confession, was a high
> school graduate. * * * Martinez makes no claim that he suffered from
> any type of physical disability or mental impairment that impacted the
> voluntariness of his confession. * * * [T]he at-home interrogation,
> from the moment the officers entered Martinez's home until they left

the home, lasted less than 30 minutes. * * * At all times during the interrogation, the officers were calm and respectful towards Martinez and the tone of their conversation was cooperative. There was no yelling or screaming by the officers. There was no evidence that Martinez was physically or verbally abused or threatened, was tricked or coerced into confessing, was made any promises that induced his confession or was subjected to any physical deprivation or mistreatment at any time during the interrogation.

{¶36} Likewise, in this case, after careful review of the transcript of the recorded interview, the transcript of the suppression hearing, and the recorded interview itself, we find no wrong doing by Sergeant Reynolds. While the evidence at the suppression hearing demonstrates Sergeant Reynolds utilized various interrogation tactics, including deception, we agree with the trial court's finding that there was no police coercion nor promise of a benefit. For the reasons which follow, we hold the trial court's finding is supported by competent credible evidence in the record. Appellant's will was not overborne and we find his confession was voluntarily made.

{¶37} In Appellant's case, Sergeant Reynolds had two prior interviews with Appellant, which appear to have established a groundwork of trust between Appellant and the officer. In the third interview, Appellant appears comfortable and engaged in a back and forth exchange with Sergeant Reynolds. Also, in the third interview, Sergeant Reynolds almost immediately informs Appellant about the DNA evidence and A.E.'s claim of

force. Thereafter, Sergeant Reynolds does utilize deceptive, vague, and indefinite statements in order to elicit Appellant's incriminating statements.

{¶38} In the third interview, Sergeant Reynolds, early on, sets the stage for the "false distinction" by telling Appellant that he believes that Appellant engaged in consensual conduct. Quickly following are multiple instances where Sergeant Reynolds urged Appellant to tell the truth. Reynolds repeatedly emphasizes the importance of honesty in Statements 1, 4, 5, 6, 11, and 12. In Statement 6, Reynolds refers to himself as a truth-seeker. In *State v. Adkins,* 4th Dist. Scioto No. 2010CA3367, 2011-Ohio-5360, we observed that " '[A]n admonition to tell the truth' " is neither a promise nor a threat, and is completely permissible during an interrogation. *Id* at 48, quoting, *State v. Cooey,* 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989)(superseded on other grounds). *See also* St*ate v. Wiles,* 59 Ohio St.3d 71, 80–81, 571 N.E.2d 97 (1991) (following *Cooey* and holding that "admonitions to tell the truth directed at a suspect by police officers are not coercive in nature.").

{¶39} The record also reflects multiple instances in which Sergeant Reynolds persists in making the not fully defined distinction between rape and consensual sex. He alludes to a distinction in Statements 1, 3, and 9. Statement 7 is extremely deceptive in its vagueness and incompleteness.

Reynolds describes two factual scenarios in which rape or battery would occur, concluding "[b]ut certain definitions could be rape." Reynolds does not include the definition of rape when it involves consensual sex with a minor person., R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶40} Statement 10 is deceptive in its vagueness. Reynolds states: "I don't think we're looking at a forcible rape. I don't think that. You know what I mean? So that makes a difference." Reynolds does not explain the difference nor does Appellant ask for an explanation.

{¶41} After setting up the "consensual sexual conduct" scenario, Sergeant Reynolds urges Appellant to confess to consensual sex. In Statements 2, 3, 4, and 5, Sergeant Reynolds suggests that if Appellant doesn't tell his side of the story, A.E.'s story will automatically be believed. Reynolds urges Appellant to "get [his]version of the truth" out because by failing to do so, Appellant is "laying his fate in the hopes that we just don't believe her, when you're giving us nothing to believe." These statements are deceptive in the sense that there was no reason that Appellant had to tell his side of the story on that date. If Appellant was charged and arrested, he

could always arrange to give a statement at a later date. However, in *Adkins, supra,* at ¶ 49, we have also observed that deception is not "per se" coercive.

{¶42} Appellant has also directed us to Statement 5, where he was exhorted to tell his story so that he could even "rest easy knowing that you're being treated fairly- - which you're being treated fairly anyway." While Statement 10 is extremely deceptive and Statement 5 is deceptive in its vague reassurance, we agree with the trial court that the record is devoid of any promises of leniency in the event Appellant confessed to consensual sex.

{¶43} The only statement which alludes to any outcome in Appellant's case is Statement 10, where Sergeant Reynolds delineates potential outcomes. Reynolds describes the open-ended nature of the outcome as follows:

> I mean, it could be anything from whatever the judge
> decides * * * you know it just depends on the
> circumstances. * * * You could go to jail. You could
> just have to go to court.

It is clear Reynolds makes no promise of leniency when he acknowledges: "[T]he judge has the full discretion.* * * I don't know, I don't know. * * * I don't know what we're looking at here." Appellant also asked, "Like what happens if we did have sex?" In Statement 10, Sergeant Reynolds responded that he could not give legal advice.

{¶44} In *Scholl, supra,* at ¶ 15, the appellate court held, "Admissions [sic] to tell the truth are not coercive; the use of deceitful tactics is not dispositive but only a factor; and suggestions of leniency, promises that cooperation will be considered, and statements that confessions will be helpful do not invalidate an otherwise legal confession." See also *State v. Carovillano,* 1st Dist. No. C–060658, 2007–Ohio–5459, ¶ 25; (internal citations omitted.) Similarly, on the record before us, we find only exhortations to tell the truth; deception in the form of vague or indefinite statements; and suggestions that "honesty goes a long way." We agree with the trial court's finding and do not find Sergeant Reynolds' conduct was coercive.

{¶45} Moreover, the evidence demonstrates that Appellant was a 19-year-old high school graduate. Appellant confessed approximately 15-20 minutes into the interview with Sergeant Reynolds, after engaging in back and forth questions and answers. The evidence does not demonstrate Appellant was physically deprived or mistreated. Sergeant Reynolds did not yell or scream at Appellant. The recorded interview shows a young adult man, not a juvenile, who could have ended the interview or requested an attorney early on. Despite his young age and unsophisticated manner, we

cannot say that Appellant's confession was obtained in an illegal or coercive manner.

{¶46} For the foregoing reasons, we find no merit to Appellant's argument that his confession was the product of coercive police conduct and therefore, not voluntarily made.  Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Jason P. Smith, Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**